BOARD OF ASSESSORS OF MELROSE *vs.* EDWARD G. DRISCOLL & another.

Suffolk.     March 5, 1976. — June 10, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Taxation,* Real estate tax: exemption.  *Veteran.*

A veteran who was rated by the Veterans' Administration as "one-hundred percent (100%) disabled based in part on unemployability," pursuant to a regulation which assigned such a rating "when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation," had "a disability rating of one hundred percent as determined by the Veterans Administration" under G. L. c. 59, § 5, Twenty-second E, and, being "incapable of working" under § 5, was entitled to a partial real estate tax exemption; total disability under § 5 was not confined to a different Veterans' Administration regulation which established another type of a total disability rating of 100%. [444-449]

APPEAL from a decision by the Appellate Tax Board.

*James R. Senior* for the Board of Assessors of Melrose.
*Paul D. Harold* for the taxpayer.

REARDON, J.　This is an appeal of the board of assessors of Melrose (assessors) from a decision of the Appellate Tax Board granting an exemption to the taxpayers Edward G. Driscoll and Mary E. Driscoll pursuant to G. L. c. 59, § 5, Twenty-second E, inserted by St. 1974, c. 831, §§ 1 and 3,[1] which provides for real estate tax abatements for certain disabled veterans. The sole question before us is, as stipulated by the parties, whether the taxpayer Edward G. Driscoll has a 100% disability rating within the meaning of the statute. He was rated by the Veterans' Administration as "one-hundred percent (100%) disabled based in part on unemployability." He had applied for a partial real estate tax exemption based on his disability which was disallowed by the assessors. The Appellate Tax Board, acting under its "informal procedure" (G. L. c. 58A, § 7A) granted the exemption which has brought the assessors here.

Edward G. Driscoll is a disabled veteran, and the assessors concede that he qualifies for the tax abatement in question in all respects but one, that being whether he has a 100% disability rating within the meaning of the statute. The stamp placed on his Veterans' Administration statement from benefit payment records reads: "Subject veteran rated one hundred percent (100%) disabled based in

---

[1] "The following property shall be exempt from taxation; ... Twenty-second E, Real estate of soldiers and sailors who are legal residents of the commonwealth and who are veterans as defined in clause forty-three of section seven of chapter four, and who, as result of disabilities contracted while in such wartime service and in the line of duty, have a disability rating of one hundred per cent as determined by the Veterans Administration and are incapable of working, and who were domiciled in the commonwealth for at least six months prior to entering such service, or who have resided in the commonwealth for five consecutive years next prior to date of filing for exemption under this clause, to the amount of six thousand dollars or the sum of five hundred and twenty-five dollars, whichever would result in an abatement of the greater amount of actual taxes due, provided, that such real estate is occupied as his domicile by such person; and provided further, that if said property be greater than a single-family house, then only that value of so much of said house as is occupied by said person as his domicile or a proportionate part of five hundred and twenty-five dollars, whichever would result in an abatement of the greater amount of actual taxes due, shall be exempted."

part on unemployability." The stamp indicates that the veteran's unemployability has been considered in setting his disability rating and is to be distinguished from another stamp also employed by the Veterans' Administration which reads: "Subject veteran rated one-hundred percent (100%) disabled."

The administrator of the Veterans' Administration is instructed by 38 U.S.C. § 355 (1970) to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." Pursuant to this mandate, the administrator has promulgated a series of regulations which govern the determination of disability ratings. See 38 C.F.R. pt. 4 (1975), with amendments in 40 Fed. Reg. 42535 (1975) and 41 Fed. Reg. 11291 (1976). The backbone of the system is a rating schedule which basically consists of a list of injuries and diseases with corresponding percentage disability ratings of between 10% and 100% in ten percentage point intervals. Consistent with 38 U.S.C. § 355 (1970), § 4.1 of the regulations provides that the percentage ratings reflect the "average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." The regulations also provide, among other things, certain guidelines for "rating specialists" in evaluating the reports of medical examinations in order to classify properly the disabilities of veterans within the framework of the ratings schedule.

The regulations make clear that a total disability rating may be assigned in either of two circumstances. First, § 4.15 provides: "Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation . . . ." 38 C.F.R. § 4.15 (1975). Second, § 4.16 provides: "Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities; *Provided that,*

If there is only 1 such disability, this disability shall be ratable at 60 percent or more . . . ." 40 Fed. Reg. 42535 (1975).[2] Edward Driscoll's Veterans' Administration records indicate that his situation falls within this second category of total disability ratings as provided in § 4.16 of the regulations.

As to the difference between the two types of disability ratings of 100%, § 4.15 provides that "[t]he rating . . . is based primarily upon the *average* impairment in earning capacity" (emphasis supplied), while the caption to § 4.16 reads: "Total disability ratings for compensation based on unemployability *of the individual*" (emphasis supplied). From this and the other language of the two regulations quoted above, it seems clear that while both types of total disability ratings are keyed to the veteran's disability-related employment problems, the former, § 4.15, schedular rating incorporates some notion of the effects of the injury or disease on the average person, while under § 4.16 the agency takes into account the specific circumstances and unemployability problems of the particular disabled veteran. Although the exact procedures of the rating process are not developed extensively in the record of this case, it would seem that the § 4.15 inquiry focuses primarily on the type and extent of injury or disease incurred by the veteran and the classification of that disability

---

[2] Section 4.16 as appearing in 38 C.F.R. (1975), was amended in 40 Fed. Reg. 42535 (1975). There was no change in substance with respect to the quoted language above nor any change material to the decision in this case. However, there was a paragraph (b) added to § 4.16 which provides the possibility that an employable veteran with a scheduled disability of less than 60% could be rated totally disabled. The text of the new paragraph reads: "(b) It is the established policy of the Veterans Administration that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue." 40 Fed. Reg. 42536 (1975).

within the scheduled ratings, while under § 4.16 it is possible for a veteran with scheduled disability of less than 100% to be assigned a 100% rating in light of circumstances, presumably of a nature not found in the "average" case which, in the opinion of the agency, render him unemployable.

Turning to the tax exemption statute in question, we find that its language requires "a disability rating of one hundred per cent as determined by the Veterans Administration." The assessors argue that the Legislature had in mind only the § 4.15 type of total disability rating and not the rating based in part on unemployability under § 4.16. With this contention we cannot agree. Clause Twenty-second E was added to G. L. c. 59, § 5, by St. 1974, c. 831, § 3, some ten years after the regulations in question, including §§ 4.15 and 4.16 in substantially their present form, were promulgated by the administrator. See Fed. Reg. 6718 (1964). It is to be presumed that the Legislature acted with knowledge of existing laws including the regulations of the agency to which it referred. See *Flanagan* v. *Lowell Housing Authority,* 356 Mass. 18, 21 (1969); *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 614 (1957). There seems little question that the taxpayer Edward G. Driscoll fits within the statutory language, on its face, in that he possesses a 100% disability rating as determined by the Veterans' Administration. The statutory language does not distinguish between the two types of total disability ratings, and we see no reason why we should read such a distinction into a statutory condition which appears unambiguous. See *Gurley* v. *Commonwealth,* 363 Mass. 595, 598 (1973); *Westgate* v. *Century Indem. Co.* 309 Mass. 412, 415-416 (1941); *Allen* v. *Commissioner of Corps. & Taxation,* 272 Mass. 502, 508 (1930).

The assessors seem to argue that it is somehow improper for the administrator to assign a disability rating greater than that provided for in the schedule he has promulgated in 38 C.F.R. pt. 4 (1975), but § 4.1 of those regulations states that the rating schedule is only "a guide in the

evaluation of disability." It would appear that the administrator's power and discretion in this area are extensive. See 38 U.S.C. § 210 (c) (1) (1970) (administrator has authority to make all necessary and appropriate rules and regulations including regulations with respect to establishment of the right to benefits); and 38 U.S.C. § 211 (a) (1970) (decisions of administrator on any question of law or fact concerning benefits for veterans are final and unreviewable in the courts of the United States). See also *DeRodulfa* v. *United States,* 461 F.2d 1240, 1247-1251 (D.C. Cir.), cert. denied 409 U.S. 949 (1972); *Fritz* v. *Director of Veterans Administration,* 427 F.2d 154 (9th Cir. 1970). The administrator in selecting dual criteria for the assignment of a 100% disability rating was acting within the authority entrusted to him to implement in the most effective fashion the provisions of the benefit laws. It does not appear that the Veterans' Administration itself makes any distinction for any benefit purpose between the two classes of veterans rated 100% disabled. We do not think that the Legislature of this Commonwealth in providing a tax exemption for certain veterans with "a disability rating of one hundred per cent as determined by the Veterans Administration" intended that local assessors or this court should look behind the disability rating assigned by the Veterans' Administration or question the administrator's determination of what factors should be considered in arriving at that disability rating.

General Laws c. 59, § 5, Twenty-second E, requires that a veteran not only have a 100% disability rating but also be "incapable of working." The assessors argue that this latter condition would be meaningless if the requirement of a disability rating of 100% is interpreted to include the rating of 100% disability based in part on unemployability. We find little merit in this position. As the assessors acknowledge, it is possible that a veteran with a scheduled disability of 100% under § 4.15 might nevertheless be employable. A veteran in this condition would not qualify for the cl. Twenty-second E tax abatement due to the "incapable of working" requirement. Furthermore, even with

respect to a veteran whose 100% disability rating is based in part on unemployability, the statutory requirement that he be incapable of working is not necessarily without meaning. While we are of opinion that the Legislature intended that the assignment by the Veterans' Administration of a total disability rating be determinative as to that issue, "incapable of working" would appear to be an independent statutory requirement. Normally we would expect that a veteran who is determined to be unemployable by the Veterans' Administration would also be "incapable of working" under the statute. However, since the present record does not reveal the precise factors the Veterans' Administration utilizes in making its determination of unemployability, we would not at this time say that an independent determination of capability for work is in any and all circumstances foreclosed with respect to a veteran with a total disability rating based in part on unemployability. We further note that there is no question raised as to Edward G. Driscoll's status as incapable of working.

We conclude therefore that construing G. L. c. 59, § 5, Twenty-second E, giving to each word its ordinary meaning and considering no word superfluous, supports the taxpayers' contention that they qualify for the tax abatement there provided. It follows that the decision of the Appellate Tax Board is affirmed.

*So ordered.*