JAMES FOLEY & others[1] vs. TOWN OF NORTHBRIDGE.

Worcester. June 8, 1982. — October 19, 1982.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Police,* Career incentive pay, Collective bargaining, Compensation. *Municipal Corporations,* Police. *Arbitration,* Appropriateness of judicial proceedings.

Where police officers of a town were being compensated for overtime service under the provisions of a collective bargaining agreement rather than pursuant to G. L. c. 147, § 17B, any right they might have to the inclusion of career incentive salary increases under G. L. c. 41, § 108L, in computing their overtime pay is defined by the collective bargaining agreement. [528-532]

CIVIL ACTION commenced in the Superior Court Department on November 3, 1980.

The case was heard by *Hallisey, J.,* on motion for summary judgment.

At the request of the Appeals Court following oral argument, supplemental briefs and appendix were submitted.

*Henry J. Lane,* Town Counsel, for the defendant.

*Joseph G. Sandulli* for the plaintiffs.

PERRETTA, J.  The plaintiffs are police officers who, in 1979, were certified by the Massachusetts Board of Higher Education as eligible for career incentive "base salary" increases in accordance with the provisions of G. L. c. 41, § 108L, added by St. 1970, c. 835.[2]  The town accepted

---

[1] William J. Audette, Bruce J. Cook, Richard T. Mitchell, Keith A. Rockwood, Donald J. Roy, Walter J. Warchol, Jr., and Harvey J. Youngsma, as individuals and as members of the Massachusetts Coalition of Police, AFL-CIO.

[2] That statute provides, in pertinent part: "There is hereby established a career incentive pay program offering base salary increases to regular

the statute in 1971, but, as alleged by the officers in their complaint brought under G. L. c. 231A, it refuses to include career incentive salary increases in computing their pay for overtime hours. In the trial court, the town argued that § 108L does not require the town to include incentive increases in the computation of overtime. There being no factual issues in dispute, the trial judge allowed the officers' motion for summary judgment. Mass.R.Civ.P. 56, 365 Mass. 824 (1974). The judgment which ensued declares that § 108L increases "are applicable to all hours, including overtime hours, worked by an eligible employee" and orders the town to pay the officers the increases on all overtime hours worked since the date of the commencement of this suit, November 3, 1980. The town appeals and argues that when overtime is paid in accordance with a collective bargaining agreement and at a rate higher than required by statute, incentive increases need not be factored into pay for an officer's additional hours of service. Not only was that question never raised before the trial judge, but the parties did not even inform him of the existence of a collective bargaining agreement. We conclude that the parties' dispute must be resolved under the collective bargaining agreement. We reverse the judgment and leave the officers to seek their remedy in the proper forum: arbitration proceedings.

In its brief and at oral argument before us, the town conceded that § 108L increases could be included in overtime pay but only in those instances where a city or town pays officers for overtime hours at the minimum rate established by the applicable statute, rather than at such higher rate as might be authorized under a by-law or a collective bargaining agreement. The town represented that while it had accepted G. L. c. 147, § 17B, added by St. 1956, c. 349,

---

full-time members of the various city and town police departments . . . as a reward for furthering their education in the field of police work." (Subsequent amendments have no bearing on this case.) Salary increases are based on credit points for semester hours completed, and the method of computing the increase is detailed in § 108L.

which concerns the minimum rate of overtime pay to be paid to officers of a town accepting that provision, it also had entered into a collective bargaining agreement with the officers which authorized overtime pay at a rate in excess of that set by § 17B, thereby limiting its effect. We ordered the parties to file additional briefs and a supplemental appendix containing the collective bargaining agreement and any pertinent documents relating to it. In its supplemental brief the town states that the trial judge "disregarded the existence of the contract and the bargaining history of the parties and dealt only with the requirements of the statute [§ 108L]." The record of the proceedings in the trial court, however, shows that the controversy was presented to the trial judge by the parties in the limited context of the statutory interpretation of § 108L. It is for that very reason that the officers argue in their supplemental brief that we should not consider any contention to defeat the judgment other than those issues presented to the trial judge. *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956). Thus, the officers do not dispute the existence of the agreement; rather, they contend that the agreement may not be considered at this point in the proceedings. Because of the public interest involved in this controversy, cf. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943), we decline to ignore the existing collective bargaining agreement which both parties agree was in force at all relevant times and which we determine has a direct bearing on the dispute.

By the plain language used throughout the various paragraphs of § 108L, career incentive payments increase and become part of the base salary of an eligible officer; the increases are not separate amounts paid in addition to the officer's salary. The town does not argue to the contrary. It states that when an eligible officer is paid for overtime service pursuant to G. L. c. 147, § 17B, career incentive increases are included in the computation by reason of that increase in salary under § 108L. Section 17B provides that when an officer works in excess of five days and forty hours in any one week, he "shall be compensated at the hourly

rate of his regular compensation for his average weekly hours of regular duty or such higher rate as may be determined by the person or persons authorized to establish pay scales in the respective police departments." Cf. *Jones* v. *Wayland*, 374 Mass. 249, 256 (1978) ("The term 'compensation' encompasses both salary and wages"); G. L. c. 32, § 1, as appearing in St. 1979, c. 681 ("Regular compensation," as used in the contributory retirement system for public employees, "shall mean the salary, wages or other compensation in whatever form lawfully determined for the individual service of the employee . . . not including bonus, [and] overtime . . . pay").

We need not consider the town's concession that § 17B requires the inclusion of § 108L benefits when an eligible officer is paid for overtime service pursuant to § 17B, because our acceptance of that interpretation still would not resolve the parties' dispute. The town asserts that § 17B is inapplicable to its officers by reason of the fact that they are paid for overtime service under their collective bargaining agreement at a rate which is higher than that set by § 17B.

The collective bargaining agreement provides that "[a]n employee who performs overtime service . . . shall receive, in addition to his/her regular weekly compensation, *time and one half* of his/her straight time hourly rate for each hour of overtime service" (emphasis added). Compare § 17B. The materials contained in the supplemental appendix reveal that the officers had commenced and were in the progress of grievance procedures under the agreement and that the town had advised the officers in writing that the term "regular weekly compensation," as used in the collective bargaining agreement, "means the compensation provided in . . . the contract before an increase as a result of the application" of § 108L. Thus, in computing the overtime pay due an eligible officer, the town proceeds on the basis of the amount of that officer's hourly rate before application of § 108L. That is not to say, however, that the officers receive fewer dollars for overtime service under the agreement than they would receive under § 17B.

When a town and its officers negotiate a collective bargaining agreement, they are free to use any terms and definitions, within limits, upon which they might agree. See G. L. c. 150E, §§ 6 & 7(d) (h).

The officers rely upon *Watertown Firefighters Local 1347* v. *Watertown*, 376 Mass. 706, 714-716 (1978), for the proposition that an arbitration award cannot defeat their claim which is based upon the public policy embodied in § 108L. By the officers' reasoning, if they had continued with the dispute procedures provided for in their agreement and an arbitrator were to find in the town's favor, the officers would still be seeking judicial relief, only later rather than sooner.

We look with disfavor on the officers' request for judicial intervention without revealing in their complaint to the court that grievance procedures had been commenced but not terminated; the town is equally at fault for its failure to present these facts or even the existence of a collective bargaining agreement to the trial judge. The supplemental appendix indicates that in seeking a judicial forum the officers also gave notice to the town of submission of the unresolved grievance to arbitration in the event that the issue raised by their complaint under c. 231A was not resolved in court. We regard the officers' claim, once its true nature comes to light, as interlocutory. We think it appropriate, however, because of the public interest in the dispute, that we express our views on the public policy claim prematurely raised by the officers. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. at 731; *Jason* v. *Jacobson*, 387 Mass. 21, 23 (1982).

"Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may . . . restrict the freedom to arbitrate . . . . Key to the analysis is that the freedom to contract in exclusively private enterprises or matters does not blanket public school matters because of the governmental interests and public concerns which may be involved, however rarely that may ever be." *Watertown Firefighters,* 376 Mass. at 715-716, quoting from *School Comm. of Hanover* v. *Curry,* 369 Mass. 683,

685 (1976), and extending the principle to limit interest arbitration.

There is nothing in the express language of § 108L which supports the officers' position that career incentive salary increases must be used to compute overtime compensation, even if a collective bargaining agreement provides for an alternative method of computation. There are instances in the General Laws where the Legislature has recognized that a police officer's pay is comprised of various components. See, e.g., G. L. c. 32, § 1, defining regular compensation. It must be presumed that when the Legislature enacted § 108L, it did so with knowledge of the distinction between salary and compensation. Cf. *Assessors of Melrose* v. *Driscoll,* 370 Mass. 443, 447 (1976); *Hadley* v. *Amherst,* 372 Mass. 46, 51 (1977). The Legislature not only used the term "salary" rather than "compensation" in § 108L, it employed that term with the word "base" as an antecedent.

Career incentive salary increases are, indeed, supported by a strong public policy. "[O]ne of the purposes of § 108L is to improve the educational level of the police force through recruitment and the luring of, among others, college educated persons." *Palmer* v. *Selectmen of Marblehead,* 368 Mass. 620, 627 (1975). The public interest in improving the educational level of police forces is recognized in § 108L, which provides that "[a]ny city or town which accepts the provisions of this section and provides career incentive salary increases for police officers shall be reimbursed by the commonwealth for one half the cost of such payments."

The public interest in the education level of the police forces throughout the Commonwealth, however, is not defeated by limiting § 108L increases to an officer's salary. While it may seem that the strength of the lure depends upon the reach of the increase, money need not be the sole source of the enticement. Collective bargaining agreements can and frequently do provide for other benefits that are advantageous to police officers. Further, the Legislature has attached a greater importance to collective bargaining agree-

ments than to its own provisions regulating overtime compensation. General Laws c. 150E, § 7(d) (h), appearing in St. 1978, c. 478, § 77, provides that where there is a "conflict" between the terms of a collective bargaining agreement and c. 147, § 17B, "the terms of the collective bargaining agreement shall prevail."

Although there is a strong public policy embodied in § 108L, it does not give us the right to reword § 108L by extending it beyond "base salary," nor is it of sufficient force to override a collective bargaining agreement. See *Watertown Firefighters,* 376 Mass. at 714 n.16.

Whether the officers are entitled to inclusion of career incentive salary increases in determining their overtime pay depends upon the interpretation of the phrase "regular weekly compensation" as it is used in the collective bargaining agreement. That is a matter to be decided by an arbitrator and not the courts. The judgment is reversed, and the matter is remanded to the Superior Court where a new judgment is to enter declaring, in substance, that as the officers are being compensated for overtime service under the provisions of their collective bargaining agreement rather than pursuant to G. L. c. 147, § 17B, any right they might have to the inclusion of career incentive increases as authorized by G. L. c. 41, § 108L, is defined by that agreement. Neither party is to have the costs of this appeal.

*So ordered.*