## COLLECTIVE BARGAINING REFORM ASSOCIATION *VS.* LABOR RELATIONS COMMISSION & another.[1]

Suffolk. September 6, 2001. - March 5, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Labor,* Collective bargaining, Bargaining unit, Certification and election. *Public Employment,* Collective bargaining. *Labor Relations Commission. Administrative Law,* Decision, Judicial review.

The dismissal by the Labor Relations Commission of a petition brought by the plaintiff union seeking to sever one group of public employees from the bargaining unit represented by another union, for the purpose of holding a separate representation election, was not a final decision in an adjudicatory proceeding, and therefore, plenary judicial review was not available. [201-208]

The dismissal by the Labor Relations Commission (commission) of a petition brought by the plaintiff union seeking to sever one group of public employees from the bargaining unit represented by another union, for the purpose of holding a separate representation election, did not present a case involving extraordinary circumstances requiring immediate judicial review, where the issues involved were expressly within the commission's competence, and where there was no support in the record for the assertion that the commission's order of dismissal was arbitrary or capricious. [208-209]

CIVIL ACTION commenced in the Superior Court Department on February 22, 1999.

The case was heard by *Stephen E. Neel,* J., on a motion for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct appellate review.

*Alan J. McDonald* (*Mark A. Hickernell* with him) for the plaintiff.

*John B. Cochran* for the defendant.

*David B. Rome* for the intervener.

---

[1]Local 285, Service Employees International Union, AFL-CIO, CLC (SEIU), intervener.

*Shelley B. Kroll, Donald J. Siegel & Elizabeth A. Sloane,* for Massachusetts AFL-CIO, amicus curiae, submitted a brief.

GREANEY, J. A judge in the Superior Court dismissed a complaint for judicial review filed, pursuant to G. L. c. 30A, § 14, by the plaintiff, the Collective Bargaining Reform Association (COBRA), a labor organization. The complaint challenged a decision of the Labor Relations Commission (commission) dismissing COBRA's petition to sever a group of public employees from an existing bargaining unit and to allow COBRA to become that group's exclusive bargaining representative. The commission dismissed the petition after a hearing and without ordering a representation election. The judge in turn dismissed COBRA's complaint in the Superior Court on the ground that commission decisions made on certification proceedings are not subject to immediate judicial review. On appeal, COBRA claims that the commission's dismissal of its petition constitutes a "final decision of an agency in an adjudicatory proceeding," entitling it to judicial review pursuant to G. L. c. 30A, § 14. We granted COBRA's application for direct appellate review and now affirm the judgment of the Superior Court dismissing its complaint.

We briefly summarize the facts and procedural posture of this appeal. In 1967, the city of Boston (city) recognized the Service Employees International Union, Local 285, AFL-CIO (SEIU) as the exclusive collective bargaining representative for a wide range of nonprofessional employees, including a group now known as communication equipment operators (operators). The operators are employed by the city as part of its police department's bureau of field services and are assigned to work at police headquarters. Their primary duty is to serve as call takers on the city's enhanced 911 emergency telephone system, which is staffed by the operators twenty-four hours a day, seven days a week. The operators register each incoming call into a sophisticated computer-aided dispatch system and assign to each call one of approximately 200 possible codes based on information provided by the caller. The assigned code triggers a level of response from various agencies, such as police, fire, or emergency medical services, and entering the wrong code into

the system may lead to an inadequate or delayed response to the emergency situation.

In 1994, following the installation of the present computer-aided dispatch system and an enhanced 911 system, the operators approached SEIU regarding the possibility of a position upgrade to reflect what they believed to be their unique training, responsibilities, and working conditions. SEIU was unsuccessful in achieving the requested position upgrade, despite repeated meetings with city officials and the filing of a compensation grade appeal with the city's office of labor relations.

Due to the city's failure to grant the operators a position upgrade, as well as to general concerns about the effectiveness of SEIU negotiators on behalf of the operators in the matter, on January 21, 1997, COBRA filed a petition with the commission, pursuant to G. L. c. 150E, § 4, on behalf of a substantial number of operators. By its petition, COBRA sought to sever the operators from the bargaining unit represented by SEIU, for the purpose of holding a separate representation election.[2] SEIU was allowed to intervene in the proceedings before the commission. Both SEIU and the city (a party to the proceedings as the operators' public employer) opposed severance of the operators from the SEIU bargaining unit.

Negotiations taking place between the city and SEIU on a new contract for city workers then came to a temporary halt. On February 25, 1997, SEIU filed a prohibited practice charge with the commission alleging that the city had refused to continue negotiations with SEIU during the pendency of COBRA's petition. During the following months, SEIU staff and bargaining unit members circulated a series of petitions, letters, and published statements to individuals associated with the petition. These materials urged COBRA either to withdraw its petition or to allow negotiations to continue between SEIU and

[2]Such petitions may be referred to as representation petitions (because the employees on whose behalf it is filed seek a representation election), severance petitions (because the employees seek severance from an existing bargaining unit), or certification petitions (because the petitioner seeks to be certified as the new bargaining unit's sole representative). We shall refer to this petition as a representation petition.

the city on a new contract.[3] COBRA did not withdraw its petition, and on August 15, 1997, SEIU withdrew its prohibited practice charge against the city. The withdrawal apparently was based on the city's commitment to resume bargaining with respect to SEIU, excluding the operators.

The commission investigated COBRA's petition and issued a notice of hearing to the parties, pursuant to G. L. c. 150E, § 4. This statute provides that when "a substantial number of the employees in a bargaining unit wish to be represented by the petitioner[] or . . . alleg[e] that the exclusive representative therefor no longer represents a majority of the employees therein, [the commission] shall investigate, and if it has reasonable cause to believe that a substantial question of representation exists, shall provide for an appropriate hearing upon due notice." If the commission, after the hearing, had determined that there was a "controversy concerning the representation" of the operators, it would then have been required, pursuant to § 4, to "direct an election by secret ballot or . . . use any other suitable method to determine whether, or by which employee organization" the operators desired to be represented, and to "certify any employee organization which received a majority of the votes in such election as the exclusive representative" of the operators. Following a lengthy hearing, however, the commission dismissed the petition without directing an election.

As explained in a fifty-seven page decision, the commission's consideration of COBRA's petition followed the two-part test, set forth in *City of Beverly*, 1 M.L.C. 1108 (1974), for evaluating the merits of petitions seeking severance from an existing bargaining unit. The commission determined that the operators had satisfied the first prong of the test, because they had demonstrated that they were a "functionally distinct appropriate

---

[3]For example, on May 26, 1997, the president and secretary-treasurer of SEIU jointly sent a letter to COBRA offices, containing the following language: "Enough! You can let City employees get back to the bargaining table, and you should do it immediately. I am writing this letter to request that you either withdraw your petition to represent 911 Operators, or waive the current bargaining block you have imposed on the rest of City Employees, so that we can complete our negotiations. . . . If you lose the [commission's certification] decision, you will be back at the bargaining table with employees who will be very angry at you for blocking their ability to settle their contract."

unit with some special interests sufficiently distinct from other bargaining unit members." However, with respect to the second prong of the test, the commission concluded that the operators had failed to establish that their distinct interests "have caused or are likely to cause serious conflicts or divisions within the bargaining unit."

COBRA filed a complaint for judicial review, pursuant to G. L. c. 30A, § 14, and, thereafter, a motion for judgment on the pleadings. The judge denied COBRA's motion and ordered its complaint dismissed, relying on prior decisions of this court and the Appeals Court that hold that, absent extraordinary circumstances, decisions rendered in representation proceedings before the commission are not final adjudications open to immediate judicial review. See *Worcester Indus. Tech. Inst. Instructors Ass'n Inc.* v. *Labor Relations Comm'n,* 357 Mass. 118, 120-121 (1970); *City Manager of Medford* v. *Labor Relations Comm'n,* 353 Mass. 519, 523-524 (1968); *Local 1111, Int'l Ass'n of Fire Fighters* v. *Labor Relations Comm'n,* 14 Mass. App. Ct. 236, 238 (1982); *Sullivan* v. *Labor Relations Comm'n,* 5 Mass. App Ct. 532, 535 (1977).[4]

1. COBRA claims that the commission's dismissal of its petition falls within the ambit of G. L. c. 30A, § 14, which provides that, unless expressly precluded by law, "any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to a judicial review thereof." This claim is premised on COBRA's contention that because the commission dismissed its petition without holding an election, COBRA is left with no available avenue of recourse in which to challenge the commission's decision, and thus, the commission's dismissal of its petition was a "final decision in an adjudicatory proceeding" subject to plenary judicial review. We disagree.

This court steadfastly has denied the availability of judicial review of certification questions in the absence of an unfair labor dispute. The principle that a certification decision is not

---

[4]Not expressly stated in the judge's order denying COBRA's motion for judgment on the pleadings, but clearly implicit therein, was his determination that dismissal of the complaint was warranted for lack of subject matter jurisdiction.

reviewable until the commission has issued or denied an order was first enunciated in *Jordan Marsh Co.* v. *Labor Relations Comm'n*, 312 Mass. 597, 601-602 (1942). In *City Manager of Medford* v. *Labor Relations Comm'n, supra* at 523, this court applied the principle in the case of public employees, but foresaw possible, very limited exceptions to the general rule: "We conclude that the principles stated in the *Jordan Marsh Co.* case . . . (at least in the absence of extraordinary circumstances making certification questions of vital significance, or of questions relating to the commission's jurisdiction), should be applied to postpone judicial review of certification questions until, upon complaint, the commission has issued or denied an order . . . to desist from a practice prohibited by [the collective bargaining statute for public employees, currently found at G. L. c. 150E, § 10]." In a subsequent case, where the commission had made a choice between two unions, and the excluded union sought review, *Worcester Indus. Tech. Inst. Instructors Ass'n Inc.* v. *Labor Relations Comm'n, supra*, this court found that no extraordinary circumstances existed to justify varying the general rule. See *id.* at 120. See also *Local 1111, Int'l Ass'n of Fire Fighters* v. *Labor Relations Comm'n, supra* at 238; *Sullivan* v. *Labor Relations Comm'n, supra* at 535. Our case law is clear: "In ordinary cases judicial review of certification issues may take place only after there has been a commission decision based upon an unfair labor practice." *Worcester Indus. Tech. Inst. Instructors Ass'n Inc.* v. *Labor Relations Comm'n, supra* at 120.

As a preliminary matter, we question whether hearings held by the commission on the subject of representation petitions constitute "adjudicatory proceedings" within the meaning of G. L. c. 30A, § 14. General Laws c. 30A, § 1, defines an "[a]djudicatory proceeding" as one "in which the legal rights, duties or privileges of specifically named persons are required by . . . any provision of the General Laws to be determined after opportunity for an agency hearing." It is true that the commission was required to hold a hearing, once its preliminary investigation of COBRA's petition revealed "reasonable cause to believe that a substantial question of representation exist[ed]." G. L.

c. 150E, § 4.[5] To qualify as an "adjudicatory proceeding," however, the hearing must determine the "legal rights, duties or privileges" of "specifically named persons." Here, the commission's hearing implicated the rights of operators (those who supported COBRA's petition and those who wished to remain within the bargaining unit represented by SEIU), as public employees, "to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing . . . free from interference, restraint, or coercion." G. L. c. 150E, § 2.[6] The commission's hearing, however, was not a forum for the determination of these rights. The commission's authority was limited to deciding whether there was a "controversy concerning the representation of employees,"[7] and, if it so determined, directing an election and certifying the employee organization selected by the majority of employees in the unit. G. L. c. 150E, § 4.[8] The commission's role was essentially that of an investigatory fact finder. See *Jordan Marsh Co.* v. *Labor Relations Comm'n, supra* at 599.

Even if we were to assume that the commission's hearings fairly could be characterized as "adjudicatory proceedings," they did not result in a final order entitling COBRA to immediate judicial review. As this court stated in the *Jordan Marsh* decision, the certification "procedure does not end in any order requiring anybody to do anything and . . . there is no provision

---

[5] If the commission's preliminary investigation had revealed no reasonable cause to believe a substantial controversy concerning the representation of the operators existed, the commission could have dismissed the petition without a hearing. See G. L. c. 150E, § 4. COBRA does not argue that such a decision would be subject to judicial review.

[6] COBRA has pointed to no legal rights of its own that were at stake in the proceedings.

[7] Because COBRA's representation petition included a demand that the operators be severed from the existing unit, this determination required a finding (1) that the operators were an appropriate unit and (2) that serious conflict was likely to develop if the bargaining unit remained intact. See *City of Beverly,* 1 M.L.C. 1108 (1974).

[8] It is of no significance that the commission took evidence. The fact that an agency conducts a hearing, gathers evidence, and makes findings of facts does not automatically make the hearing an "adjudicatory proceeding" under G. L. c. 30A, § 1 (1), unless the hearing is required to determine substantive legal rights of the parties. See A.J. Cella, Administrative Law and Practice § 1542 (1986).

for a court review." *Id.* at 600. Cf. G. L. c. 150E, § 11 (authorizing commission to issue final orders on determination, after hearing, that prohibited practice was committed and providing for judicial review of those orders). Although the *Jordan Marsh* case was decided before the 1954 enactment of the Administrative Procedure Act (St. 1954, c. 681, § 1), in subsequent cases decided under G. L. c. 30A, § 14, courts have continued to deny judicial review of certification decisions in the absence of a prohibited practice order, regardless whether review was sought by a municipal employer, see *City Manager of Medford* v. *Labor Relations Comm'n, supra* at 523, or by an employee organization, see *Worcester Indus. Tech. Inst. Instructors Ass'n Inc.* v. *Labor Relations Comm'n, supra* at 120. See also *Local 1111, Int'l Ass'n of Fire Fighters* v. *Labor Relations Comm'n, supra* at 238; *Sullivan* v. *Labor Relations Comm'n, supra* at 535.

That the commission dismissed COBRA's petition without directing that an election be held does not render COBRA's situation more "final" than that of employee organizations in prior cases denying judicial review. In *Worcester Indus. Tech. Inst. Instructors Ass'n Inc.* v. *Labor Relations Comm'n, supra*, the union had petitioned the commission to establish separate bargaining units of professional teachers within the same school department. See *id.* at 119. The commission determined that there was no reason to justify the smaller units; dismissed the petition; and directed an election in which all the teachers might choose one exclusive representative, or none at all. *Id.* at 119, 120. In *Local 1111, Int'l Ass'n of Fire Fighters* v. *Labor Relations Comm'n, supra*, one union had been the exclusive bargaining representative for all uniformed employees in the municipal fire department below the rank of fire commissioner and fire chief; a second union sought to be certified as the exclusive representative of two existing bargaining units within that fire department. By virtue of the commission's determinations that a separate bargaining unit of deputy fire chiefs was appropriate, each union lost its attempt to be certified as the exclusive representative of deputy fire chiefs. See *id.* at 237. In both the above cases, however, it was not the election process, but the absence of a prohibited practices order that was critical to the

holdings that the unions were not entitled to review of the commission's decision. See *Worcester Indus. Tech. Inst. Instructors Ass'n Inc.* v. *Labor Relations Comm'n, supra* at 120-121; *Local 1111, Int'l Ass'n of Fire Fighters* v. *Labor Relations Comm'n, supra* at 238.[9]

The reasoning set forth to this point comports with well-settled Federal law that certification decisions of the National Labor Relations Board (board) are not subject to judicial review. See, e.g., *Boire* v. *Greyhound Corp.*, 376 U.S. 473, 481 (1964) (no review of certification proceedings even when "erroneous assessment of the particular facts before the [b]oard has led it to a conclusion which does not comport with the law"); *American Fed'n of Labor* v. *NLRB*, 308 U.S. 401, 403-404, 409-411 (1940) (no review of certification of single exclusive bargaining representative for disparate groups of longshore workers; review limited to orders prohibiting unfair labor practices); *Goethe House N.Y., German Cultural Ctr.* v. *NLRB*, 869 F.2d 75, 80 (2d Cir.), cert. denied, 493 U.S. 810 (1989) (no review of decision to hold representative election for non-German employees of German nonprofit organization); *United Food & Commercial Workers, Local 400* v. *NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982) (no review of board's refusal to set aside results of procedurally flawed election; "[b]oard representation proceedings are nonadversarial actions and do not result in the issuance of judicially reviewable final orders"); *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.)* v. *NLRB*, 599 F.2d 816, 819 (7th Cir. 1979) (no review of dismissal of union's petition for certification unless board acted contrary to specific statutory directive). Indeed, the United States Court of Appeals for the District of Columbia Circuit, in *Physicians Nat'l House Staff Ass'n* v. *Fanning*, 642 F.2d 492 (D.C. Cir. 1980), cert. denied, 450 U.S. 917 (1981), refused to review the dismissal of a union's certification petition, on facts similar to this case, in the absence of a showing of a violation of a clear statutory mandate. See *id.* at 495 ("Board orders in representation

---

[9]COBRA's reliance on this court's decisions in *Quincy City Hosp.* v. *Labor Relations Comm'n*, 400 Mass. 745 (1987), and *Lyons* v. *Labor Relations Comm'n*, 397 Mass. 498 (1986), is misplaced. Both of those cases involved attempts to seek judicial review of the commission's decisions in the context of a prohibited labor practice.

proceedings [are] unreviewable unless they become the subject of unfair labor practice orders . . .''). The court specifically noted that the absence of an alternative means of redress is irrelevant to the availability of judicial review. See *id.* at 499. Although there are differences between the general formulation of G. L. c. 150E and the Federal Labor Relations Act, this is not an area where any compelling reason exists to differentiate our law from the Federal analogue.[10]

The policy directive contained in G. L. c. 150E, § 3, is unequivocal — to provide for "stable and continuing labor relations." The commission raises the specter that allowing judicial review of certification decisions would cause "tensions and instability in existing bargaining relationships, leaving unions uncertain about which employees they must represent for purposes of collective bargaining, leaving employers uncertain about which employees working conditions they must bargain about, and leaving employees uncertain about their status." COBRA dismisses these fears as "chimerical" and suggests that no delays or uncertainty would occur were COBRA, or a similarly situated union, permitted to challenge the commission's refusal to order an election, when the commission has, in effect, "washed its hands of [the] matter." We take no side in this particular debate. We generally agree, however, with the cautionary words of Justice Brennan of the United States Supreme Court, in his separate opinion in *Leedom* v. *Kyne*, 358

---

[10]We decline to adopt the approach of the Supreme Court of Rhode Island, in *Barrington Sch. Comm.* v. *State Labor Relations Bd.*, 608 A.2d 1126 (R.I. 1992), concerning the appropriateness of direct review of certification decisions. In that case, the court permitted a school committee to challenge the decision of the State labor relations board that the secretary to the school committee's business manager should be included in the collective bargaining unit for all secretaries employed by the school committee. See *id.* at 1133. The Rhode Island court held that (1) certification proceedings are "contested cases," as defined in the Rhode Island Administrative Procedures Act, R.I. Gen. Laws § 42-35-1(c) (1993); and (2) a certification decision is final when there is "no further opportunity for the party to vindicate its rights in the administrative process itself." *Id.* at 1131. Looking beyond the facts of the case at bar, the court noted that "[i]t is apparent that an order of the board certifying the results of a representation election is a final order and may be appealed . . . at once because it settles any responsibilities that labor and management might have to bargain collectively." *Id.* at 1132. This conclusion extends the scope of judicial review even beyond that argued by COBRA in the present case.

U.S. 184, 191 (1958), that permitting immediate judicial review of a certification proceeding in the absence of extraordinary circumstances would allow "[b]oth union and management . . . to use the tactic of litigation to delay the initiation of collective bargaining when it suits their purposes." *Id.* at 196 (Brennan, J., dissenting). Such a delay, perhaps, could also lead to a situation where "collective bargaining was prevented, the basic purpose of [G. L. c. 150E] was frustrated, and the result was serious hardship to both the employer and employees." *Id.* (Brennan, J., dissenting).[11] These concerns enforce the notion that courts should not become involved in certification proceedings prospectively, but rather should examine them retrospectively, if necessary, in light of events following the denial of certification, according to the remedy next discussed.

While understandably disappointed in the commission's dismissal of its petition, COBRA may not now use the courts to compel the commission to hold an election, or otherwise interfere with SEIU's present status as the operators' exclusive representative. Based on SEIU's representation of the operators to date, the commission declined to infer that serious conflicts within the bargaining unit were likely to occur in the future. If this finding was incorrect, a labor dispute will likely unfold. For example, the operators might conclude that SEIU has not satisfied its duty of fair representation required by G. L. c. 150E, § 5, and file a claim of prohibited practice on that basis. See *Switzer* v. *Labor Relations Comm'n*, 36 Mass. App. Ct. 565, 567 (1994). As summarized by the Appeals Court, and noted below,[12] the duty of fair representation is quite broad. If such a claim (or other claim) is filed, the commission could review its

---

[11]Indeed, the facts of this case illustrate how a pending representation petition can disrupt ongoing negotiations between the incumbent union and the employer. Allowing litigation of the commission's decision on such a petition would only prolong the period of uncertainty, to the detriment of all concerned.

[12]"The duty of fair representation arises out of a union's duty fairly to represent employees in the bargaining unit regarding collective bargaining with the employer and in the enforcement of the resulting collective bargaining agreement. See *Vaca* v. *Sipes*, 386 U.S. 171, 177 (1967). 'Breach of the duty of fair representation occurs if a union's actions toward an employee are "arbitrary, discriminatory, or in bad faith." ' *Graham* v. *Quincy Food Serv. [Employees] Ass'n & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990), quoting from *Vaca* v. *Sipes, supra* at 190. We have noted that

determination that severance of the operators was not warranted, and thus the appropriateness of the commission's action in dismissing COBRA's petition would be indirectly reviewed.[13] Thereafter, judicial review of the certification decision of the commission would be appropriate in connection with review of the decision by the commission on the prohibited practice claim. Under G. L. c. 150E, § 11, even an order by the commission dismissing a prohibited practice complaint without a hearing is a "final order" subject to judicial review. See *Boston Police Superior Officers Fed'n* v. *Labor Relations Comm'n*, 410 Mass. 890 (1991); *Alexander* v. *Labor Relations Comm'n*, 404 Mass. 1005, cert. denied, 493 U.S. 955 (1989). Further, if no labor dispute develops, COBRA need not abandon its efforts on behalf of the operators but may file another petition for severance and representation with the commission at an appropriate time in the future. See 456 Code Mass. Regs. 2.04 (1993).

2. We reject COBRA's assertions that this case presents extraordinary circumstances, as suggested in *City Manager of Medford* v. *Labor Relations Comm'n*, 353 Mass. 519, 524 (1968), which might require immediate review because (1) COBRA has no other recourse by which to challenge the commission's dismissal of its petition; (2) the commission lacked authority under G. L. c. 150E, § 3, to refuse to order a representation election, once it had determined that the operators were an appropriate bargaining unit under the first part of the *Beverly* test, *City of Beverly*, 1 M.L.C. 1108 (1974); and (3) the commission's decision was arbitrary and capricious. What has been said above on the matter of finality disposes of

---

in Massachusetts this duty of fair representation has been recognized expressly by statute since 1965 (see *Pattison* v *Labor Relations Comm'n*, 30 Mass. App. Ct. 9, 15 n.9 [1991]), with G. L. c. 150E, § 5, as inserted by St. 1973, c. 1078, § 2, imposing the obligation upon employee organizations to represent all the employees in the bargaining unit 'without discrimination and without regard to employee organization membership.' " *Switzer* v. *Labor Relations Comm'n*, 36 Mass. App. Ct. 565, 567 (1994).

[13]In light of the commission's findings that SEIU may have taken steps to force operators to withdraw their support for COBRA's efforts to represent them, and COBRA's allegations that certain operators suffered adverse work-related consequences as a result of their activities in support of COBRA, it may be relevant that G. L. c. 150E, § 10 (*b*), makes it a prohibited practice for a labor organization to "[i]nterfere, restrain, or coerce any . . . employee in the exercise of any right guaranteed under [G. L. c. 150E]."

COBRA's first assertion. As for the second, certification issues are "expressly within the commission's competence and the manner in which it interprets a nuance of the statute does not subtract from its authority to deal with the certification question." *Local 1111, Int'l Ass'n of Fire Fighters* v. *Labor Relations Comm'n*, 14 Mass. App. Ct. 236, 239 (1982). See *Boston Police Patrolmen's Ass'n, Inc.* v. *Labor Relations Comm'n*, 16 Mass. App. Ct. 953, 955 (1983). Finally, there is no support in the record for COBRA's assertion that the commission's order of dismissal, issued after eight days of hearings and explained in a fifty-seven page decision, was arbitrary or capricious.

*Judgment affirmed.*