Troy, Paul E., J.
Introduction
The plaintiff, International Association of Firefighters, Local 3188 (“Local 3188”), brought this action seeking a preliminary injunction against the Town of Lakeville (“Lakeville”) requiring Lakeville to implement an interest arbitration award which was granted after negotiations through the Joint Labor-Management Committee (“JLMC”) process. Local 3188 requests the preliminary injunction pursuant to Section 4A, Chapter 589 of the Acts of 1987. Local 3188 argues that Chapter 589, Section 3, of the Acts of 1987 authorizes the JLMC to order arbitration in this negotiation over a provision regarding 24-hour shift schedules in the proposed contract between Lakeville and the firemen’s union. Lakeville argues that Chapter 11 of the Acts of 1990 repealed the JLMC’s authority to order arbitration on this issue. Lakeville argues that enforcement of the arbitration award is inappropriate, given its contention that the JLMC had no authority to require arbitration. After a hearing, and for the reasons set forth below, the plaintiffs motion for a preliminary injunction is ALLOWED to the extent set forth in the order.
*148 BACKGROUND
Local 3188 and Lakeville were parties to a collective bargaining agreement which expired on June 30, 2004. After they were unable to reach agreement on the terms of a new contract, the JLMC ordered binding arbitration on two issues before a three-member panel, pursuant to St. 1987, c. 589, §11. Before the arbitration hearing, the parties resolved their dispute on one of the issues, leaving only the 24-hour shift schedule to be arbitrated. The panel issued an arbitration award on September 30, 2005, which required that “[t]he Town shall adopt a 24-hour shift schedule of 24 hours on, 48 hours off, 24 hours on, 96 hours off.” In its decision, the JLMC panel cited similar awards from at least 12 other interest arbitrations in towns throughout the Commonwealth, although Lake-ville continues to assert that the JLMC has no authority to render such awards.
Lakeville has not complied with the terms of the arbitration award. Rather, Lakeville brought an action under G.L.c. 249, §4, the certiorari statute, and G.L.c. 231 A, §1, the declaratory judgment statute, challenging JLMC’s authority to grant the arbitration award.[2] On September 26, 2006, the court (Giles, J.) denied Lakeville’s motion for a default judgment in that action, citing the fact that Lakeville had failed to comply with Standing Order 1-96. Nonetheless, Lakeville relies heavily on its contention that Local 3188 should be defaulted in the declaratory judgment action in arguing against Lakeville’s motion for a preliminary injunction.
In addition to alleging that the JLMC lacks authority to grant the arbitration award, because the 24-hour shift schedule is a management decision not subject to collective bargaining, Lakeville argues that it cannot operate its Advanced Life Support (“ALS”) service consistent with a waiver granted by the State Office of Emergency Management Service (“OEMS”) if it implements the 24-hour shift schedule. Lakeville currently operates its ALS ambulance under a waiver, pursuant to 105 Code Mass. Regs. §§170.385(2)(a) and 170.385(2)(b). The OEMS waiver allows Lakeville three years of operating its ALS system with paramedic staffing 8 hours during each 24-hour period, and then requires that Lakeville offer ALS services staffed by a paramedic 24 hours per day. Lakeville has operated its ALS service under this waiver since 2001. The parties do not dispute that, during this litigation, Lakeville augmented its paramedic staff from three to four licensed paramedics, so that a paramedic could be on duty 24 hours per day, and that the fourth paramedic was hired on November 10, 2005.
Local 3188 requests that this court order an immediate implementation of the 24-hour work schedule. Local 3188’s complaint also requested that this court order additional preliminary relief, which was rendered moot by the parties’ subsequent admissions and agreements.[3]
DISCUSSION
This court may only issue a preliminary injunction if it determines that the plaintiff will suffer irreparable harm if the injunction is denied, and that the plaintiff has a reasonable likelihood of success on the merits. This court must also consider the injury to the defendant if the injunction is granted, and must weigh the risk of harm to the public in granting or denying the injunction. Brookline v. Goldstein, 388 Mass. 443, 447 (1983). These factors are considered in conjunction with each other; if this court determines that the plaintiff has a greater likelihood of success on the merits, it may require a lesser showing of irreparable harm. Packaging Industries v. Cheney, 380 Mass. 609, 616-17 (1980). The proper standard “is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance for success on the merits.” Id. at 617.
Judicial review of JLMC decisions is governed by the provisions of G.L.c. 30A, §14. St. 1987, c. 589, §4A(4). Additionally, G.L.c. 150E, §11, the public sector collective bargaining statute, provides for judicial review of JLMC decisions in accordance with the provisions of G.L.c. 30A, §14. Although an appeal pursuant to G.L.c. 30A, §14 “shall not operate as a stay of enforcement of the agency decision,” this court may “order a stay upon such terms as it considers proper.” G.L.c. 30A, §14(3).
Pursuant to the Massachusetts Administrative Procedure Act, judicial review of an agency’s decision under G.L.c. 30A is limited to the administrative record. G.L.c. 30A, §14(4), 14(5); Cohen v. Bd. of Registration in Pharmacy, 350 Mass. 246, 253 (1966). The party appealing an administrative decision bears the burden of demonstrating that the decision is invalid. Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989). The Supreme Judicial Court has noted that “[a] state administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing” and “all rational presumptions” must be made in favor of the validity of regulations promulgated by that agency. Berrios v. Dept. of Pub. Welfare, 411 Mass. 587, 595 (1992).
It is well settled in this Commonwealth that an “agency’s interpretation of its own regulation and statutory mandate will be disturbed on review only if the interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious.” Brookline v. Comm’r of the Dept. of Environmental Quality Eng’g., 398 Mass. 404, 410 (1986). In reviewing an agency’s decision, this court must give due weight to the agency’s experience, technical competence, specialized knowledge, and statutorily conferred discretion. G.L.c. 30A, §14(7); Flint v. Comm’r of Pub. Welfare, 412 Mass. 416, 420 (1992). This court may set aside an agency’s decision only if it is unsupported by substan *149 tial evidence or based on an error of law. Bagley v. Contributory Ret. Appeal Bd., 397 Mass. 255, 258 (1986).
Likelihood of Success on the Merits
The JLMC orders arbitration when, as here, it determines that “there is an apparent exhaustion of the processes of collective bargaining which constitutes a potential threat to public welfare.” St. 1987, c. 589, §4A(3)(a). Courts in this Commonwealth decide whether or not a subject is a mandatory subject of collective bargaining on a case-by-case basis. G.L.c. 150E, §6; City of Worcester v. Labor Relations Comm’n, 438 Mass. 177, 181 (2002). Lakeville argues that matters of public safely or public policy are not subject to arbitration, and that the JLMC had no authority to issue an arbitration award here. In support of this contention, Lakeville cites Watertown Firefighters, Local 1347 v. Town of Watertown, 376 Mass. 706, 715-16 (1978) (noting that public policy may restrict the freedom to arbitrate); Foley v. Town of Northbridge, 14 Mass.App.Ct. 526, 530-31 (1982) (noting that school salary increases may be subject to a public policy limitation on interest arbitration); and Boston v. Boston Police Patrolmen’s Ass’n, 8 Mass.App.Ct 220, 226-27 (1979). While arbitration may be properly limited for public policy reasons in some circumstances, the cases Lakeville cites involve policy decisions, unlike the issues of hours and scheduling in question here; determination of work “hours” is explicitly listed as subject to collective bargaining under G.L.c. 150E, §6.
Lakeville also contends that “core management decisions” are not subject to collective bargaining, and that the decision to create a new shift is a core management decision. City of Worcester v. Labor Relations Comm’n, 438 Mass. 177, 181-82 (2002) (holding that the decision to assign prosecutorial duties to town counsel rather than to police prosecutors is a core managerial decision not subject to arbitration). Lake-ville does, however, acknowledge that the working hours of collective bargaining unit members are a mandatory subject of collective bargaining. Lakeville also acknowledges that “level of service, public policy,” and “public safety” concerns may be subject to collective bargaining, “on a permissive basis” but insists that they are not subject to “direction through an arbitration process.”
Relying on Collective Bargaining Reform Ass’n v. Labor Relations Comm’n, 436 Mass. 197, 202-04 (2002) (denying judicial review of a certification process in the absence of a fair labor dispute), Lakeville claims that the JLMC’s hearing is not the proper forum for determination of “the legal rights, duties or privileges of either Lakeville or Local 3188 members.” This comparison is inapposite, since the facts here do not involve certification issues, and the JLMC here, unlike in Collective Bargaining Reform Ass’n, has issued a final decision. Lakeville argues that the JLMC’s role is limited to a determination of “whether there exists an apparent exhaustion of the processes of collective bargaining which constitutes a potential threat to public welfare,” St. 187, c. 589, §4A(3)(a), and that this role is only one of an investigatory fact finder. Despite the court’s determination (Giles, J.) that Lakeville is not in compliance with Superior Court Standing Order 1-96 in its 2005 litigation, Lakeville argues that all of the contentions raised in its earlier litigation must be addressed prior to this court’s consideration of whether to issue a preliminary injunction.[4]
Additionally, Lakeville argues that implementing the JLMC arbitration award would endanger its OEMS waiver for ALS services. Lakeville argues that it has just eight staff members in the fire department, only three of whom are paramedics, and therefore could not currently comply with the arbitration decision because of the waiver requiring that ALS be available eight hours per day, seven days per week.
The public employees’ collective bargaining statute provides that town and public employees such as firefighters must “negotiate in good faith with respect to wages, hours, standards of productivity and performance, and any other terms and conditions of employment.” G.L.c. 150E, §6. According to the plain language of the statute, whether firemen are required to work a 24-hour shift relates to “hours,” and is a mandatory subject of collective bargaining. The Appeals Court has recently confirmed that 24-hour work shifts for firemen are a topic of mandatory collective bargaining. Local 2071, Int’l Ass’n of Firefighters v. Bellingham, 67 Mass.App.Ct. 502, 508, 525 (2006) (holding that “shifts structure hours of employment and fit neatly within the plain meaning of ‘hours’ in G.L.c. 150E, §6,” and noting that it should give deference to the JLMC, which has “consistently, on more than a dozen occasions over a fourteen year period, interpreted Section 4A to permit awards that include 24-hour shift provisions”). Based on the Appeals Court’s holding in Local 2071, Local 3188 has demonstrated that it is likely to prevail on the merits, which favors allowing its motion for a preliminary injunction.
Irreparable Harm
Local 3188 argues that its members have suffered, and will continue to suffer, irreparable harm because of Lakeville’s failure to implement the 24-hour shift schedule. Local 3188 claims that its members have lost invaluable time with their families, and that this loss is not compensable by monetary damages, so that its members have no adequate remedy at law. Under G.L.c. 150E, there is no automatic stay of an arbitration award pending appeal; this court may grant such a stay if, and to the extent, it deems proper. Because the contract between Lakeville and Local 3188 was to expire on June 30, 2007, the members of Local 3188 have already suffered the loss of the benefits under the 24-hour shift schedule for two and one-half years of the proposed three-year contract. Thus, considera *150 tions of its members’ irreparable harm weigh in favor of granting a preliminary injunction to Local 3188.
Balancing of Harms
Lakeville admits that it approved and appropriated “sufficient funds” to meet the costs of the arbitration award at town meetings in the spring of 2005, as well as in the spring of 2006, so it will not suffer financial harm if the preliminary injunction is granted. Lakeville argues that it will suffer irreparable harm if it loses its OEMS waiver for ALS services. The parties do not dispute, however, that Lakeville hired a fourth paramedic in November 2005, so that there is no longer an issue of inadequate paramedic coverage which might endanger Lakeville’s OEMS waiver. Lakeville now has one paramedic for each of the four teams identified to implement the 24-hour shift schedule. Lakeville’s primary argument regarding its harm is its claim that the JLMC had no authority to make the arbitration award regarding shift scheduling. Since the Appeals Court has recently determined that the JLMC does have authority to make such awards, however, this argument must fail. Thus, Lakeville has failed to demonstrate any harm if the preliminary injunction is issued.
In making its arbitration award, the JLMC noted that many towns in this Commonwealth, comparable to Lakeville, have successfully implemented the 24-hour shift schedule, despite initial opposition by fire chiefs. The JLMC also noted the strong public interest in having a settled contract between the firemen and the town, one of the reasons that the Legislature chose to implement St. 1987, c. 589, §4A(3)(a). Since Lake-ville has failed to show harm if the preliminary injunction is issued, Local 3188’s members have demonstrated irreparable harm if the injunction is not issued, and public policy dictates that public safety is more assured if Lakeville has a settled contract with its union firefighters, the balance of harms indicates that the preliminary injunction should be issued.
ORDER
For all the foregoing reasons, it is hereby ORDERED that the plaintiffs motion requesting a Preliminary Injunction be ALLOWED. It is further ORDERED that:
1. The Town of Lakeville is hereby ORDERED to implement a 24-hour shift schedule in accordance with the JLMC’s arbitration award pending the resolution of the underlying action.
2. It is further ORDERED that this case be consolidated with Civil Action 2005-01315, Lakeville v. Local 3188, Int’l Ass’n of Fire Fighters, now pending before the Plymouth County Superior Court, pursuant to Mass.R.Civ.P. 42. The parties shall list the captions of both cases on all future papers filed in the consolidated action, placing the older case, with docket number, 2005-01315, first in the caption.

 Town of Lakeville v. Local 1388, Int’l Assoc. of Firefighters, & another, Superior Court Civil Action No. 2005-1315 (2005).

 Local 3188 asked that this court order “all non-cost items” of the JLMC’s September 30, 2005 award be immediately implemented. Local 3188 also asked that this court order the implementation of “the cost items” of the award, or, in the alternative, order Lakeville to appropriate money to fund these items, in accordance with St. 1987, c. 589, §4A(3)(a). At hearing, the parties agreed that their only remaining issue was the 24-hour shift schedule, and Lakeville also conceded that it had approprtated money in its 2005 and 2006 budget to cover the contract costs.

See n.2, supra.